UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EUGENE SCALIA, Secretary of Labor, United States Department of Labor, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 20-cv-10044-DJC ) ) |
| BELECO, INC. d/b/a PIZZA PEDDLER; CONCO, INC. d/b/a/ PIZZA PEDDLER; and PETRO BELEZOS, | ) ) ) ) |
| Defendants. | ) ) ) ) ) |

## MEMORANDUM AND ORDER

CASPER, J.                                                                                          July 19, 2021

### I.    Introduction

Plaintiff Eugene Scalia, Secretary of the United States Department of Labor ("the Secretary") filed this lawsuit against Defendants Beleco, Inc. ("Beleco") and Conco, Inc. ("Conco"), and their owner and officer, Petro Belezos ("Belezos") (collectively, "Defendants") alleging Defendants failed to pay overtime compensation and federal minimum wages to employees, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.  D. 1. The Secretary has moved for summary judgment.  D. 33.  For the reasons stated below, the Court ALLOWS the motion.

### II.   Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter

of law.  Fed. R. Civ. P. 56(a).  "A fact is material if it carries with it the potential to affect the outcome of the suit under applicable law."  Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000).  The movant bears the burden of demonstrating the absence of a genuine issue of material fact.  Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex v. Catrett, 477 U.S. 317, 323 (1986).  If the movant meets its burden, the non-moving party may not rest on the allegations or denials in its pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but must come forward with specific admissible facts showing that there is a genuine issue for trial.  Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor."  Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

## III.    Factual Background

The following facts are drawn from the Secretary's statement of material facts.  D. 35.[1]

### 1.    The Wage and Hour Division's Investigations

Beleco and Conco, both companies in Massachusetts, operate restaurants.  D. 35 ¶¶ 2-5. Belezos owns and is the corporate officer for both companies.  Id. ¶ 6.  The Wage and Hour Division of the United States Department of Labor (the "Wage and Hour Division" or the "Division") investigated Beleco and Belezos for the period from July 30, 2016 to July 29, 2018 (the "Beleco Investigation").  Id. ¶ 15.  The Division concluded from the Beleco investigation that Beleco owed $68,672.43 in overtime pay to ten employees and an equal amount in liquidated damages.  Id. ¶ 17.  The Division also investigated Conco and Belezos for the period from August

---

[1] Defendants failed to file a response to the Secretary's statement of material facts as required.  Accordingly, the Secretary's statement of material facts, D. 35, is deemed admitted.  Stonkus v. City of Brockton Sch. Dep't, 322 F.3d 97, 102 (1st Cir. 2003) (quoting D. Mass. L.R. 56.1) (providing that "[m]aterial facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by the opposing parties unless controverted by the statement required to be served by opposing parties"); see Rodio v. R.J. Reynolds Tobacco Co., 416 F. Supp. 2d 224, 227 (D. Mass. 2006) (deeming defendant's facts admitted where plaintiff disputed facts, but failed to present supported facts that controvert assertions in defendant's statement of facts).

26, 2016 to August 25, 2018 (the "Conco Investigation"), id. ¶18, and discovered that Conco owed $58,210 in overtime pay to four employees and an equal amount in liquidated damages, id. ¶ 20, and $26,970 in minimum wage back wages to a single employee and an equal amount in liquidated damages, id. ¶ 21.

Defendants did not compensate Nicos Kontis ("Kontis"), one of their employees, in any form from August 26, 2016 to August 25, 2018. Id. ¶ 22. Kontis worked 60 hours per week during the period covered by the Conco investigation. Id. ¶ 23. The Division calculated the total minimum wage back wages due to Kontis by applying the applicable federal minimum wage of $7.25 to each of the first 40 hours of work Kontis performed each workweek, id. ¶ 24, and concluded the total amount Conco and Belezos owe Kontis in minimum wage back wages is $26,970, and an equal amount in liquidated damages, for a total of $53,940, id. ¶ 25.

### 2. *Calculations for Overtime Violations and Back Wages*

Various employees worked more than 40 hours per week, ranging from 44 to 65 hours per week, and were not paid one and one-half times their regular rate of pay for hours worked over 40 in a workweek. Id. ¶¶ 26-28. The Division calculated that Defendants owe their employees a total of $126,882.43 in overtime back wages and an equal amount in liquidated damages, for a total of $253,764.86 for the periods covered by the Beleco and Conco Investigations. Id. ¶ 29. To calculate the overtime back wages, the Division performed calculations on a workweek-by-workweek basis. Id. ¶ 30. For employees who were paid a lump sum, the Division first divided the amount paid by Defendants in compensation to each employee for the workweek by the hours Defendants stated their employees worked. Id. ¶ 31. The Division utilized Beleco and Conco employee Wage and Hour Forms, WH-55s, to determine the lump sum paid to each employee. Id. ¶¶ 32-33. By dividing the lump sum amount Defendants paid each employee for a workweek by

3

the hours Defendants stated their employees worked, the Division determined the regular rate of pay for each employee for that work week. Id. ¶ 34. The Division also used the Massachusetts state minimum wage in effect at the time as the regular rate of pay for tipped employees in an overtime work week if Defendants took a tip credit for said employees. Id. For non-tipped employees who were paid a lump sum and whose rate of pay fell below the Massachusetts state minimum wage in effect, the Division used the state minimum wage in effect at the time as the employee's regular rate of pay in an overtime workweek. Id. The Division then multiplied one-half each employee's regular rate of pay by the number of hours worked over 40—in accord with the hours worked admitted by Defendants—to obtain the half-time overtime premium owed to each employee for that work week. Id. ¶ 35. For non-tipped employees whose rate of pay fell below the Massachusetts state minimum wage in effect during an overtime work week, the Division additionally calculated back wages owed in an amount equal to the difference between the applicable regular rate in effect and the rate paid to the employee by multiplying that difference by the employee's total work hours. Id.

To calculate the overtime back wages due to Kontis, the Division used the Massachusetts state minimum wage in effect at the time as Kontis's regular rate of pay for the hours Defendants admitted Kontis worked over 40 hours in a work week. Id. ¶ 39. To assess the overtime wages owed to Kontis, the Division multiplied the admitted hours Kontis worked over 40 hours in a workweek by 1.5 times his regular rate in effect at the time. Id. The Division also brought Kontis's non-overtime rate up to the Massachusetts state minimum wage in effect at the time by multiplying the first 40 hours of his work by the difference between the applicable regular rate in effect and the federal minimum wage. Id.

Utilizing these methods, the Division calculated Defendants owe employees overtime back wages ranging from $436.36 to $43,590.00 in unpaid overtime premiums.  Id. ¶ 40.

### 3.   *Liquidated Damages, Willfulness and Recordkeeping Violations*

Prior to the Beleco and Conco Investigations, Defendants were aware of the requirement to pay employees one and one-half times their regular rates of pay for hours worked over 40 in a workweek, id. ¶ 41, but took no actions to determine if they complied with the overtime and record keeping provisions of the FLSA.  Id. ¶ 42.  Defendants produced no evidence that they took affirmative steps to determine whether their pay practices with respect to Kontis satisfied minimum wage requirements.  Id. ¶ 43.  Defendants also failed to keep an accurate record of the hours worked per day for at least one of their employees, id. ¶ 44, failed to keep an accurate record of the total hours worked per week for at least one of their employees, id. ¶ 45, and failed to keep an accurate record of the cash wages paid to at least one of the employees, id. ¶ 46.

## IV.   Procedural History

The Secretary instituted this action on January 10, 2020, D. 1, and has now moved for summary judgment, D. 33.  The Court heard the parties on the pending motion and took the matter under advisement.  D. 38.

## V.   Discussion

### A.   **Failure to Pay the Overtime Premium**

The Secretary seeks summary judgment on overtime and minimum wage violations.  D. 34 at 2.  The FLSA requires an employer to compensate its employees "not less than one and one-half times the regular rate at which [the employee] is employed" for each hour worked in excess of 40 hours per workweek unless those employees are exempt.  29 U.S.C. §§ 207(a)(1), 213.  "A claim for unpaid overtime wages must demonstrate that the plaintiffs were employed 'for a

workweek longer than forty hours' and that any hours worked in excess of forty per week were not compensated 'at a rate not less than one and one-half times the regular rate.'" <u>Manning v. Boston Med. Ctr. Corp.</u>, 725 F.3d 34, 43-44 (1st Cir. 2013) (quoting 29 U.S.C. § 207(a)(1)). Pursuant to the FLSA, for Defendants to be liable, the Secretary must prove both that an employee incurred unpaid overtime work and that Defendants "had actual or constructive knowledge that [the employee] was working overtime." <u>Prime Communications, Inc. v. Sylvester</u>, 34 Mass. App. Ct. 708, 709, 712 (1993). The knowledge inquiry "requires an assessment of what the employer knew or should have known and is to be made in view of the employer's 'duty . . . to inquire into the conditions prevailing in his business.'" <u>Vitali v. Reit Mgmt. & Rsch., LLC</u>, 88 Mass. App. Ct. 99, 103 (2015) (quoting <u>Gulf King Shrimp Co. v. Wirtz</u>, 407 F.2d 508, 512 (5th Cir. 1969)). "In reviewing the extent of an employer's awareness, a court 'need only inquire whether the circumstances . . . were such that the employer either had knowledge [of overtime hours being worked] or else had the opportunity through reasonable diligence to acquire knowledge.'" <u>Id.</u> at 103-04 (emphasis omitted) (quoting <u>Reich v. Department of Conservation & Natural Resources</u>, 28 F.3d 1076, 1082 (11th Cir. 1994)).

Here, Defendants do not dispute that their employees worked over 40 hours per week or that they failed to pay at least some of those employees one and one-half times their regular rate of pay for overtime hours worked. D. 36 at 4. In Defendants' response to the Secretary's first set of interrogatories, D. 34-8, Defendants listed the weekly hours worked by each of the individuals cited by the Division and listed their hours as ranging from 40 to 63 hours, with a number of employees working over 60 hours per week, <u>id.</u> at 3-4. Defendants do dispute, however, the amounts due to these employees as calculated by the Secretary, arguing that the Division's calculations fail to consider supplemental and additional payments, including (1) tips paid to

drivers; (2) a $16,000 settlement with the Commonwealth, which included several employees; and (3) retroactive payments and an ownership stake given to Kontis.  D. 36 at 3-4.  Defendants also argue, in the alternative, that Kontis and Gilberto Nunes ("Nunes") were managers, and, therefore, not entitled to minimum wage.  Id. at 5.

Although Defendants assert these various arguments in their opposition, they failed to respond to or offer their own statement of material facts.  Accordingly, the facts in the Secretary's statement of undisputed material facts were deemed admitted in their entirety.  Stonkus, 322 F.3d at 102 (quoting D. Mass. L.R. 56.1).  Despite this omission, the Court will address Defendants' legal arguments as follows.

> 1.   *Drivers Tips*

The first of Defendants' arguments is that their drivers "received additional funds in the form of tips" and that these tips were "sufficient to compensate [the] employees for the amount due at the overtime rate due to them."  D. 36 at 3.  Defendants present, however, no evidence of the purported tips their drivers received, nor do they assert or explain who specifically received the tips, in what amount or whether the tips were at a premium rate.  Perez v. Lorraine Enterprises, Inc., 769 F.3d 23, 29 (1st Cir. 2014) (explaining that "the absence of evidence on an issue redounds to the detriment of the party who bears the burden of proof on that issue" and that defendants "bore the burden of proof" as to their tip credit argument).  Moreover, even if such evidentiary support were provided, these arguments fail as a matter of law.

Pursuant to the FLSA, compensation for hours in excess of 40 per week shall be paid "at a rate not less than one and one-half times the regular rate at which [the employee] is employed." 29 U.S.C. § 207(a)(1).  Employers may treat a portion of received tips as a credit against minimum wage and overtime compensation obligations, but this "tip credit" is only permitted under certain

conditions, including notice to the employees.  Martin v. Tango's Rest., Inc., 969 F.2d 1319, 1321 (1st Cir. 1992), as amended (July 31, 1992) (citing 29 U.S.C. § 203(m)).  "Any tips received by the employee in excess of the tip credit need not be included in the regular rate," as "[s]uch tips are not payments made by the employer to the employee as remuneration for employment within the meaning of the Act."  29 C.F.R. § 531.60.  Subsection (e) includes "extra compensation provided by a premium rate paid for certain hours worked . . . in excess of the maximum workweek applicable," or "in excess of the employee's normal working hours or regular working hours . . ."  29 U.S.C. § 207(e)(5).  "[S]ums excluded from the regular rate pursuant to subsection (e) shall not be creditable toward . . . overtime compensation required" under Section 207.  29 U.S.C. § 207(h)(1).

Here, for employees Defendants took a tip credit for, the Division used the Massachusetts state minimum wage in effect at the time as the regular rate of pay for the tipped employee in an overtime workweek to calculate the amount of overtime back wages due.  D. 35 ¶¶ 34-35.  The Secretary asserts that any tips received in excess of Defendants' tip credit are not considered "payments made by the employer to the employee as remuneration for employment within the meaning of the Act," 20 C.F.R. § 531.60, and therefore, are not compensation pursuant to 29 U.S.C. § 207.  D. 37 at 3-4.  Even assuming, however, that the alleged tips could be considered extra compensation pursuant to section 207(e), Defendants have neither asserted nor otherwise shown that the drivers' tips were provided at a premium rate, as additionally required by 29 U.S.C. § 207(e)(5)-(7).  On this record, the alleged drivers' tips are not creditable toward overtime compensation.

2.      *Settlement Between Defendants and Employees*

Defendants also claim that the Secretary failed to consider a $16,000 settlement between Defendants and the Commonwealth.  D. 36 at 4.  As evidentiary support, Defendants offer Belezos' affidavit, in which Belezos asserts that he settled a case with the Commonwealth that included several employees, including Ricardo Dos Santos ("Santos"), Democrito Germano Moll ("Moll"), Gilberto Nunes ("Nunes"), Julio Penso ("Penso") and Fabio Pinto ("Pinto") were included in the $16,00 settlement.  D. 36-1 ¶ 5.  While Defendants argue this settlement was not considered by the Division, they fail to assert or provide any evidentiary support or legal basis for the Court to conclude the settlement should be considered.  Defendants fail to state or otherwise explain what the settlement was for, what time period it covered, how much was distributed to the listed employees or if the settlement pertained in any way to overtime compensation.  Without more, the settlement does not present a genuine dispute of material fact as to whether and what Defendants owe their employees wages.

3.      *The Equity Stake and FLSA Manager Exemption*

Turning to Kontis, Defendants assert that an agreement between Belezos and Kontis should also be considered in the Division's calculation of overtime compensation due.  D. 36 at 3; D. 36-1 ¶ 4.  The agreement, in the form of a letter dated February 24, 2021, does not purport to compensate Kontis for overtime due, but rather, purports to be "[i]n lieu of salary."  D. 36-2 at 1. The letter states that on or about July 2016, Kontis and Belezos came up with the agreement to compensate Kontis for approximately $30,800 of unpaid labor by offering Kontis either an equity stake equivalent to the amount owed or a lump sum from the proceeds if Belezos ever sold the business.  Id.  There is no indication or support for the assertion that the equity stake or lump sum offered therein were to compensate Kontis both for his regular salary and the overtime performed

for the period covered in the agreement—July to December 2016.  Id.  Moreover, the Secretary's investigation period for Kontis ran from August 25, 2016 through August 25, 2018.  D. 34 at 3. Accordingly, the agreement only accounts for a few months of the relevant period, assuming *arguendo* that Kontis was provided the equity stake or lump sum referenced therein.  D. 36-1 at 1. Defendants proffer no evidence to show that Kontis has been paid the alleged balance of $18,700 since the agreement was made, which despite pertaining to Kontis' unpaid wages in 2016, was only formed on February 24, 2021—five years after the wages were due and more than a year after the complaint in this case was filed.  Id.

Defendants additionally argue that Kontis and Nunes were managers, and therefore, were not entitled to overtime compensation.  D. 36 at 5.  "[T]he application of an exemption under the Fair Labor Standards Act is a matter of affirmative defense on which the employer has the burden of proof."  Corning Glass Works v. Brennan, 417 U.S. 188, 196–97 (1974).  Here, Defendants failed to plead any exemptions to the FLSA as affirmative defenses, having failed to assert any affirmative defenses.  D. 8.  Even if, however, the Court did not deem the exemption defense as waived, Defendants' argument still fails.  For an employee to be exempt from overtime requirements because they were a manager or assistant manager, "Defendants bear the burden of proving that the employees for whom they are claiming the exemption were in fact paid on a salary basis and performed the managerial duties that would qualify them for the exemption."  Scalia v. Shalimar Distributors LLC, No. 4:18-cv-01642, 2020 WL 4335020, at *4 (M.D. Pa. July 28, 2020). More specifically, they must show that (1) that the employee was "[c]ompensated on a salary basis pursuant to § 541.600 at a rate of not less than $684 per week . . . exclusive of board, lodging or other facilities," 29 C.F.R. § 541.100(a)(1); (2) that the employee's "primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or

subdivision thereof," id. § 541.100(a)(2); (3) that the employee "customarily and regularly directs the work of two or more other employees," id. § 541.100(a)(3); and (4) that the employee "has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight," id. § 541.100(a)(4).

Defendants purport that Nunes and Kontis performed managerial duties, including "hiring, firing, ordering materials and supplies, and opening and closing." D. 36 at 5. These claims, alone, fail to demonstrate whether management was Nunes' or Kontis' primary duty, 29 C.F.R. § 541.100(a)(2), or whether Nunes and Kontis were salaried employees receiving "a rate of not less than $684 per week," id. § 541.100(a)(1). The agreement proffered by Defendants between Belezos and Kontis states that Kontis would receive an equity stake or lump sum for the period between July to December 2016 "[i]n lieu of salary," D. 36-2 at 1, indicating that Kontis did not receive a salary at this time. Defendants fail to provide any evidence to support that Kontis received a salary following the purported July to December 2016 period, nor do they allege how much the salary was or would have been. Defendants admit in their response to the Secretary's interrogatories that Kontis was not paid a weekly cash payment during the "final quarter of 2016," D. 34-8 at 9, and provide no records to show that Kontis was a salaried employee or was paid during the period purported by the Secretary—from August 26, 2016 through August 25, 2018. D. 35 ¶ 18.

At the summary judgment stage, "[t]he opposing party 'cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." Lemieux v. City of Holyoke, 740 F. Supp. 2d 246, 251 (D. Mass. 2010) (quoting McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir.1995)); see Perez, 769 F.3d at

30 (noting that restaurant owner's testimony that waiters were informed a portion of their tips would be counted as wages was "not sufficient to constitute definite, competent evidence establishing the existence of a genuine issue of material fact").  Although Belezos disputes the Secretary's findings by broadly pointing to the existence of drivers' tips, the purported settlement, his agreement with Kontis and Kontis' and Nunes' alleged managerial positions, D. 36-1, he "never la[ys] a proper basis for these assertions and, thus, such assertions lack sufficient force to influence the summary judgment calculus," Perez, 769 F.3d at 30.  Accordingly, without more, the Secretary is entitled to summary judgment on this claim.

### B.      The Amount of Overtime Back Wages Owed

The Secretary argues that he is entitled to summary judgement as to the amount of overtime back wages, as Defendants failed to maintain an accurate and adequate record of the hours their employees worked.  D. 34 at 7.  Once it has been shown that the employee "in fact performed work for which he was improperly compensated" and "produce[d] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference," specifically "where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes," "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence."  Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-88 (1946), superseded by statute on other grounds as stated in Integrity Staffing Sols., Inc. v. Busk, 574 U.S. 27, 32 (2014).  "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate."  Id. at 688.

Here, Belezos asserts that Defendants kept accurate records of the hours for "many" of its employees, D. 36 at 6 (citing D. 36-1 ¶¶ 9-10), but admits to not having kept accurate records for

all, <u>id.</u>  Defendants also fail to include or cite to any of these alleged records and admit to having inaccurate records for at least some of their employees.  <u>Id.</u>  The mere assertion that many of their employee records are accurate is not sufficient evidence of the "precise amount of work performed," nor does it negative "the reasonableness of the inference" to be drawn from the Secretary's evidence.  <u>Anderson</u>, 328 U.S. at 687-88.  Without more, the Court may award damages, "even though the result be only approximate."  <u>Id.</u> at 688.

Based on the hours Defendants provided to the Division, the Division performed back wages calculations on a workweek-by-workweek basis, D. 35 ¶ 30, pursuant to 29 C.F.R. § 778.104.  For employees paid by the hour, the Division used the hourly wage as each employee's regular rate of pay, <u>id.</u> ¶ 37, pursuant to 29 C.F.R. § 778.110(a), and for those paid a lump sum each week, the Division divided the amount of compensation paid by Defendants to each employee for the workweek by the number of hours each employee worked per week to calculate their regular rate of pay, <u>id.</u> ¶¶ 31-33.  The Division also used the Commonwealth's minimum wage as the regular rate of pay in applicable cases.  <u>Id.</u> ¶ 34.  The Division then multiplied one-half the regular rate of pay by the number of hours worked over 40 to obtain the premium owed to each employee for that work week, <u>id.</u> ¶ 35, pursuant to 29 C.F.R. §§ 110(a), 112, 113(a).  Separate calculations were made for non-tipped employees whose rate of pay fell below the state minimum wage during an overtime week.  <u>Id.</u> ¶ 35. The Division concluded given these calculations that Defendants owe $126,882.43.  D. 34 at 11.  The Court allows summary judgment as to the amount of overtime back wages owed to its employees.

### C.    <u>Failure to Pay Kontis Required Minimum Wage</u>

Turning to the Secretary's additional claims as to Kontis, the Secretary asserts Defendants failed to pay Kontis the federal minimum wage pursuant to 29 U.S.C. § 206(a)(1)(C).  D. 34 at 11.

Defendants assert in their opposition that Kontis was paid retroactively and with an ownership stake in the company for the period from July to December 2016.  D. 36 at 3.  They further that he was given a partnership interest valued at $30,800 to be paid once the restaurant was sold and that the amount has been reduced since via several payments to Kontis of $12,000.  Id.  The agreement Defendants offer as evidence states therein that Belezos owed Kontis $30,800 for the period from approximately July to December 2016 and offered to give Kontis an equity stake or equivalent in lieu of the referenced salary.  D. 36-2 at 1.  The Secretary asserts that Kontis received no compensation from Defendants from August 26, 2016 to August 25, 2018.  D. 35 ¶ 22.  The period referenced in Belezos' agreement with Kontis solely covers a few months of the two-year period in which Kontis did not receive adequate pay, D. 36-2 at 1, and Defendants fail to provide any evidentiary support for the assertion that the payment offered to Kontis in the February 2021 agreement has since been paid, id.  Without more, summary judgment is allowed as to the Defendants' failure to pay Kontis minimum wage for the relevant period.

### D.    Liability Period

Shifting to damages, the Secretary argues Defendants willfully violated the FLSA by taking no steps to determine whether their pay practices complied with the FLSA.  Pursuant to the FLSA, employees can seek recovery for back wages within two years of a cause of action accruing.  29 U.S.C. § 255(a).  If the employer's violation of the FLSA is willful, however, employees may seek recovery within three years of the cause of action accruing.  Id.  An employer willfully violates the FLSA when it "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988).  The Secretary contends that it is not in dispute that Defendants knew of the FLSA's overtime and recordkeeping requirements and continually failed to adhere to them, failing to pay Kontis any

wages at all, D. 34 at 13-14, and furthers that a three-year statute of limitations period should apply, id. at 13.   Defendants counter that their failure to abide by the FLSA's overtime and recordkeeping requirements was not a willful violation of the Act, but rather was due to Belezos' youth, inexperience running a business and inability to afford counsel at the time.  D. 36 at 8.  They additionally argue that they kept accurate records of the hours for "many" of their employees.   D. 36 at 6.   Defendants fail, however, to specify what steps were taken to abide by the statue's regulations, nor do they provide any records to support their assertion.   Moreover, in response to the Secretary's interrogatories, Defendants admitted that they took no actions to determine whether they complied with overtime or recordkeeping provisions.  D. 35 ¶ 42.  Specifically, Belezos stated, "I cannot recall any such efforts prior to the investigation to determine compliance."  D. 34-8 at 8-9.  Without more, summary judgment is allowed as to the liability period.

### E.    Liquidated Damages and Failure to Maintain Required Records

The Secretary requests for summary judgment that Defendants did not act in good faith, an award of liquidated damages and a prospective injunction.  D. 34 at 12.   "Once it has been determined that [an] employer violated the [FLSA], it must show that it acted reasonably and in good faith in order to avoid liability for liquidated damages."  Andrews v. DuBois, 888 F. Supp. 213, 221 (D. Mass. 1995) (citing 29 U.S.C. §§ 216(b), 260).   "The standard for determining whether or not to grant liquidated damages is whether the employer 'acted in good faith and had reasonable grounds for believing that its acts did not violate [the Act].'"  Id. (quoting D'Camera v. District of Columbia, 722 F. Supp. 799, 800 (D.D.C. 1989)).  The 'good faith' requirement is "subjective and requires proof that the employer had an honest intention to ascertain and follow the requirements of the statute," whereas the 'reasonableness' requirement is "an objective one, and ignorance alone does not serve to exonerate the employer."  Id. (quoting Reich v. Newspapers

of New England, Inc., 834 F. Supp. 530, 542 (D.N.H. 1993)).  If the employer fails to make this showing, "[l]iquidated damages must be awarded" in an amount "left to the sound discretion of the court."  Martin v. David T. Saunders Const. Co., 813 F. Supp. 893, 902 (D. Mass. 1992). "Determination of an employer's intention and the existence or nonexistence of a reasonable basis for its opinion are fact determinations requiring 'familiarity with both the problems and the parties.'"  Id. at 903 (quoting Brock v. Claridge Hotel & Casino, 846 F.2d 180, 187-88 (3d Cir. 1988)).

Here, the Secretary contends that Defendants did not attempt to follow the overtime and recordkeeping provisions of the FLSA prior to the Beleco and Conco Investigations.  D. 34 at 13. Defendants counter that their efforts to comply with the FLSA are evidenced by such actions as their offering an ownership stake and $12,000 payment to Kontis, D. 36 at 7, or their paying one of their employees, Pinto, time and a half when he began working over forty hours per week, id. Defendants also admit, however, that they do not recall any attempts to comply with the FLSA prior to the Secretary's investigation, D. 34-8 at 8-9, and they do not proffer any evidence of affirmative steps to determine whether their pay practices—such as the ownership stake offered to Kontis five years after his wages were due—were sufficient to comply with FLSA guidelines.  The assertion that a single employee was properly paid overtime wages, D. 36 at 7, without more, is inadequate to show "an honest intention to ascertain and follow" the statute's requirements. Andrews, 888 F. Supp. at 221.  Accordingly, the Secretary's motion for summary judgement on this issue is allowed and the Secretary is entitled to recover liquidated damages.

## VI.   Conclusion

For the foregoing reasons, the Court ALLOWS Defendants' motion for summary judgment, D. 33.

16

**So Ordered.**

/s/ Denise J. Casper
United States District Judge